**Bernadette AARON, et al.,**
**Plaintiffs–Appellants,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PENNSYLVANIA, Intervenor–Appellant,**

v.

**AMERICAN HOME INSURANCE GROUP, et al.,**
**Defendants–Appellees,**

and

**Lake Charles Stevedores, Inc.,**
**Defendant–Appellee.**

No. 87–4923.

United States Court of Appeals,
Fifth Circuit.

June 26, 1989.

As Amended Aug. 15, 1989.

Roger G. Burgess, Lake Charles, La., for Aaron, et al.

Donald C. Brown, Lake Charles, La., for Nat. Union Fire Ins.

Hunter W. Lundy, Lake Charles, La., for defendants-appellees.

Before KING, JOHNSON and JOLLY, Circuit Judges.

KING, Circuit Judge:

The plaintiffs appeal the district court's 12(b)(6) dismissal of that part of their complaint which seeks to hold Lake Charles Stevedores, Inc. liable. Alternatively, plaintiffs seek a writ of mandamus ordering the district court to grant the plaintiffs' motion to remand this cause to state court. Because we find that there is no federal subject matter jurisdiction, we vacate the district court's order of dismissal and return this case to the district court with

instructions to remand the cause to Louisiana state court.

## I. *Factual and Procedural Background*

Wash Aaron died after being struck by a front-end loader manufactured by Caterpillar, Inc. ("Caterpillar"). When the accident occurred, Aaron was taking a break from his job of shovelling debris from the hold of a vessel. At the time of his death, Aaron was employed by Lake Charles Stevedores, Inc. ("LCSI") at the Lake Charles Harbor and Terminal District ("LCHTD"). The plaintiffs concede that Aaron was a longshoreman, working in that capacity in the hold of a vessel on navigable waters at the time of the accident. Since Aaron's death, LCSI's Longshore and Harbor Workers' Compensation Act ("LHWCA"),[1] insurance carrier, American Home Insurance Groups, a division of National Union Fire Insurance Co. ("National Union"), has been paying $484 per week in benefits in addition to the initial lump sum payment already made to Aaron's survivors under the LHWCA.[2]

The plaintiffs, Aaron's widow, minor child and major children, filed this wrongful death action in Louisiana state court against LCSI, LCHTD and Caterpillar alleging that both intentional and negligent tortious actions taken by the defendants caused Aaron's death. The defendants[3] removed the case to the United States District Court for the Western District of Louisiana pursuant to 28 U.S.C. § 1441,[4] asserting that the claim is governed by the LHWCA and therefore there is federal question jurisdiction. Two days after removing the case, defendants LCSI and National Union filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), asserting that the LHWCA provided the plaintiffs' exclusive remedy and that the plaintiffs were receiving LHWCA benefits. The plaintiffs filed a motion to remand, arguing that the parties are not diverse, nor is there federal question jurisdiction. They asserted that, under the saving to suitors clause of 28 U.S.C. § 1333,[5] they had elected a state law remedy and that the defendants therefore had no right to remove the cause. The plaintiffs argued that they had a right to elect their remedy under the doctrines of "maritime but local" and "twilight zone" which create an area of concurrent state and federal jurisdiction. Additionally, they contended that because their complaint alleges intentional torts on the part of Aaron's employer, LCSI, the exclusivity provisions of the LHWCA are inapplicable.

The district court agreed with the defendants. It denied the plaintiffs' motion to remand, asserting that according to the plain and literal meaning of the LHWCA, the decedent was clearly covered at the time of his accident, given that there was no dispute that he was a longshoreman working in the course of his employment in the hold of a vessel on navigable waters.

1. 33 U.S.C. §§ 901–950 (1986).

2. National Union has intervened in this action, asserting that it will be entitled to reimbursement for the benefits it has paid to plaintiffs in the event of plaintiffs' success against LCSI in this case.

3. Caterpillar did not join in the petition for removal, but the removal petition indicated that Caterpillar would consent to the action.

4. 28 U.S.C. § 1441 provides in pertinent part:
   (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the

district and division embracing the place where such action is pending.

   (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

5. 28 U.S.C. § 1333 provides in pertinent part:
   The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
   (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

The court held that the removal was proper and that the LHWCA created the plaintiffs' exclusive remedy, and it granted the defendants' motion to dismiss.

The plaintiffs appeal both aspects of this decision.[6] They first reassert their position that the state and federal courts have concurrent jurisdiction of their claim under the saving to suitors clause, that they may elect their remedy and that therefore the failure to remand was error. They argue the concepts of "maritime but local" and "twilight zone" to defeat federal jurisdiction, asserting that Aaron was engaged in a "local" activity at the time of his death. The plaintiffs conclude that the district court's denial of their motion to remand was improper, and they seek to have the district court's judgment denying the motion for remand set aside by a writ of mandamus. We agree that the district court's denial of the plaintiffs' motion to remand was error, but as we set forth below, we do not agree that mandamus is the appropriate remedy.

The plaintiffs argue also that the LHWCA does not provide their exclusive remedy here and that the 12(b)(6) dismissal was therefore incorrect. They assert that their allegations of intentional torts on the part of Aaron's employer take them out of the exclusivity provisions of the LHWCA and argue also that Aaron's status at the time of his death would not preclude recovery under state law tort theory. Because we find that the district court did not have jurisdiction over this cause, we cannot and do not reach these questions.

## II. *Appealability of the Refusal to Remand*

■ A district court's denial of a motion to remand is not a final order, and it therefore is not reviewable on appeal. *Poirrier v. Nicklos Drilling Co.*, 648 F.2d 1063 (5th Cir.1981); Wright, Miller & Cooper, Federal Practice & Procedure § 3914. The interlocutory denial of a motion to remand can

be appealed only if it is certified by the district court according to 28 U.S.C. § 1292(b). *Melancon v. Texaco, Inc.*, 659 F.2d 551 (5th Cir. Unit A Oct.1981). However, when the refusal to remand is coupled with a final order, the appellate court has jurisdiction to review the district court's denial of the motion. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548 (5th Cir. Unit A Dec.1981). In the case before us, the district court simultaneously denied the plaintiffs' motion to remand and granted the defendants' 12(b)(6) motion to dismiss. The district court subsequently made the order dismissing the two defendants before us in this appeal a final order pursuant to rule 54(b). Therefore, a final appealable order was entered along with the denial of the motion for remand, and we can review the latter without a need to resort to the extraordinary remedy of mandamus.

## III. *The Well–Pleaded Complaint Rule*

The relevant portion of plaintiffs' complaint, filed in state court, alleges intentional and negligent torts on the part of the defendant LCSI resulting in Aaron's death. On its face, the complaint nowhere mentions or implicates the LHWCA or any other federal law; it simply asserts a state law tort action. The defendants removed the case on the ground that the plaintiffs' allegations "involve questions arising from a federal statute, namely the [LHWCA]."

■ A defendant may remove a state court action to federal court only if the action could have originally been filed in the federal court. *Caterpillar v. Williams*, 482 U.S. 386, 391–92, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); 28 U.S.C. § 1441(a). Thus, where there is no diversity jurisdiction, a federal question must be present in order for removal to be proper. *Caterpillar*, 107 S.Ct. at 2429. The well-pleaded complaint rule places even further restrictions on a defendant's ability to remove a case from state court. The rule provides that the plaintiff's properly

---

**6.** The plaintiffs' original appeal to this court was dismissed for want of a final judgment pursuant to 28 U.S.C. § 1291, because two defendants, LCHTD and Caterpillar, remained in the suit.

The district court has since ordered that the judgment dismissing LCSI be deemed final according to Federal Rule of Civil Procedure 54(b). Thus, we can now hear this appeal.

pleaded complaint governs the jurisdictional determination, and if, on its face, such a complaint contains no issue of federal law, then there is no federal question jurisdiction. *Id.; Franchise Tax Bd. v. Laborers Vacation Trust,* 463 U.S. 1, 10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983). The fact that a federal defense may be raised to the plaintiff's action—even if both sides concede that the only real question at issue is created by a federal defense—will not suffice to create federal question jurisdiction. *Id.* at 12, 103 S.Ct. at 2847; *Powers v. South Central United Food & Commercial Workers Unions,* 719 F.2d 760, 764 (5th Cir.1983). Thus, the general rule provides that a federal defense to a state law claim does not create removal jurisdiction.[7]

### A. The *AVCO* Exception

■ There are exceptions, however, to the well-pleaded complaint rule, in which a court will find that a federal claim is involved as the result of federal preemption of the asserted state claim. One such exception is known as the artful pleading doctrine, in which the court seeks to evaluate a plaintiff's motive for her failure to plead a federal case of action.[8] If the court concludes that the plaintiff's failure to plead her federal claim was not in good faith, but rather was an attempt to conceal the fact that her claim was truly federal, the court will allow the removal. *See* Charles Alan Wright, The Law of Federal Courts § 38; Mary P. Twitchell, Characterizing Federal Claims, Preemption, Removal, and the Arising–Under Jurisdiction of the Federal Courts, 54 George Washington L.Rev., 812, 825 (1987). This court has applied the artful pleading doctrine principally in cases which involve the preemptive effect of section 301 of the Labor Manage-

ment Relations Act ("LMRA"), 29 U.S.C. §§ 141–187. *Beers v. North American Van Lines, Inc.,* 836 F.2d 910, 913 (5th Cir.1988); *Eitmann v. New Orleans Public Service, Inc.,* 730 F.2d 359 (5th Cir.), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984). *Eitmann* has been followed in at least one other circuit, which added that the artful pleading doctrine should be "applied with circumscription" to avoid "difficult issues of federal-state relations," *United Jersey Banks v. Parell,* 783 F.2d 360, 368 (3d Cir.), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 979 (1986). The reasoning underlying the artful pleading doctrine involves the same type of preemption analysis as the cases we discuss below regarding what we term the "*Avco* exception."

Another theory for finding removal jurisdiction based on a federal defense, first indicated in *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), holds that federal law can so completely preempt a field of state law that the plaintiff's complaint must be recharacterized as stating a federal cause of action. In *Avco,* the plaintiff was an employer which went to state court seeking an injunction against a labor strike, arguing that the strike was in violation of a collective bargaining agreement. The defendant union removed the case. The Supreme Court held that the removal was proper— even though the plaintiff's complaint did not, on its face, involve a federal question—because section 301 of the LMRA so thoroughly preempts state law as to force the Court to recharacterize the plaintiff's complaint as arising under that section of the act. The Court in *Avco* looked to the jurisdictional grant in section 301 of the LMRA, and to its own earlier interpretation of that grant in *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d

---

**7.** Standing behind the well-pleaded complaint rule is the idea that, as Justice Holmes described it in *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913), the plaintiff is the "master" of his claim. The well-established idea that the plaintiff decides what law to rely upon was reaffirmed in *Caterpillar.* The concept of plaintiff as master of his claim is especially pertinent in removal cases, seeing that if the plaintiff chooses a federal forum and does not plead a federal cause of action, he will be permitted to amend his complaint to assert the federal claim. 28

U.S.C. § 1653. *See also* Wright, Miller and Cooper, Federal Practice and Procedure § 3566. Conversely, if he chooses state court and fails to plead a federal cause of action, he cannot be forced to amend his complaint to do so.

**8.** This type of concern over the potential for forum manipulation is suggested in *e.g., Federated Dep't Stores v. Moitie,* 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981); *Yawn v. Southern Ry.,* 591 F.2d 312, 316 (5th Cir.1979), *cert. denied,* 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 304 (1980).

972 (1957). It found that "[a]n action arising under § 301 is controlled by federal substantive law even though it is brought in a state court.... Removal is but one aspect of 'the primacy of the federal judiciary in deciding questions of federal law.'" 390 U.S. at 560, 88 S.Ct. at 1237 (quoting *England v. Medical Examiners,* 375 U.S. 411, 415–16, 84 S.Ct. 461, 464–65, 11 L.Ed.2d 440 (1964)) (citation and footnotes omitted). The Court held, therefore, that the claim under the collective bargaining agreement arose under the laws of the United States, and removal jurisdiction existed.

In *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), the Court again faced the preemption/recharacterization issue, this time as it related to the Employee Retirement Income Security Act of 1974 ("ERISA").[9] California taxing authorities sought to collect unpaid individual income taxes by levying benefits held by the defendants on behalf of the taxpayer/beneficiaries in an ERISA-governed welfare benefit fund. The fund trustees refused to honor the levy, asserting that ERISA barred them from doing so. The state taxing authorities then filed a complaint in state court against the trust and its trustees asserting that the defendants had failed to honor the levy and were liable in damages, and further seeking a declaratory judgment regarding the question of ERISA preemption. The defendant trust removed the suit on the ground of federal question jurisdiction.

In its analysis of the jurisdictional question, the Court discussed the well-pleaded complaint rule at some length. It then applied the rule to both actions alleged in the plaintiff's complaint. As for the first cause of action, the court said:

> Even though state law creates [plaintiff's] causes of action, its case might still "arise under" the laws of the United States if a well-pleaded complaint establishes that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties. For [plaintiff's] first

cause of action—to enforce its levy, under [California law]—a straightforward application of the well-pleaded complaint rule precludes federal-court jurisdiction.... [F]ederal law becomes relevant only by way of defense to an obligation created entirely by state law....

463 U.S. at 13, 103 S.Ct. at 2848. The Court went on to find the declaratory judgment claim a "more difficult problem" since federal preemption was a "necessary element" of that claim. *Id.* at 14, 103 S.Ct. at 2848. It found, however, that the well-pleaded complaint rule applied to the declaratory judgment claim to bar removal.

The Court then turned to the plaintiff's *Avco* argument which asserted that ERISA, like section 301 of the LMRA, was meant to create a body of federal common law, and therefore any cause of action which would require the interpretation or application of ERISA arises under the laws of the United States. *Id.* at 24, 103 S.Ct. at 2854. The Court agreed that section 502(a) of ERISA, 29 U.S.C. § 1132(a), creates express causes of action under the statute but held that the cause of action before it—brought by the California taxing authority—was not such a cause of action. Therefore, the Court held, the preemptive scope of the section did not reach this action, and the *Avco* argument failed. *Id.* at 24–25, 103 S.Ct. at 2854–55. The Court reserved the question of whether a claim that fell within section 502(a) would create preemption removal jurisdiction under the *Avco* exception.

The Court in *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), addressed this reserved issue. *Taylor* looked first to the Court's simultaneous decision in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), for the proposition that ERISA preempts common law contract and tort claims, *Taylor,* 481 U.S. at 62, 107 S.Ct. at 1545. That determination alone, however, did not lead immediately to a decision that the federal courts had removal jurisdiction. The Court continued to analyze the case under the rubric of the well-pleaded complaint rule. The Court began by saying that federal preemption is ordinarily simply a defense to a state suit. *Id.*

---

9. 29 U.S.C. §§ 1001–1461 (1985).

It then discussed the *Avco* corollary to that rule, saying: "Congress may so completely pre-empt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character. For 20 years, this Court has singled out claims pre-empted by § 301 of the [LMRA] for such special treatment." *Id.* at 63, 107 S.Ct. at 1546.

The Court went on to hold that because of the preemptive force of section 502(a), 29 U.S.C. § 1132(a)(1)(B), the plaintiff's state court claims were necessarily displaced by federal law, and removal jurisdiction existed. In the course of its analysis, the Court first states that "[i]n the absence of explicit direction from Congress, this question would be a close one." *Id.* In the same paragraph, however, the Court goes on to say that:

[e]ven with a provision such as § 502(a)(1)(B) that lies at the heart of a statute with the unique preemptive force of ERISA, however, we would be reluctant to find that extraordinary pre-emptive power, such as has been found with respect to § 301 of the LMRA, that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. But the language of the jurisdictional subsection of ERISA's civil enforcement provisions closely parallels that of § 301 of the LMRA.... The presumption that similar language in two labor law statutes has a similar meaning is fully confirmed by the legislative history of ERISA'S civil enforcement provisions.

*Id.* at 65, 107 S.Ct. at 1547. Thus, it is somewhat unclear if, in the absence of manifest congressional intent, the question of whether a federal statute's preemptive force creates removal jurisdiction should be treated as "close question," or instead as a question in which we should be "reluctant" to find that such "extraordinary" power exists.

Writing in concurrence with the unanimous opinion, Justice Brennan, with whom Justice Marshall joined, is much more explicit in his directive. He states that the preemptive force necessary to create removal jurisdiction should only be held to exist when " 'Congress has *clearly* manifested an intent to make causes of action ... removable to federal court.' " *Id.* at 68, 107 S.Ct. at 1548 (quoting from the Court's opinion, adding emphasis). The concurrence then adds that the "prudent" method of dealing with this issue when there is no clear manifestation of congressional intent to create removal jurisdiction is to remand the case to state court. *Id.*

In addition to looking to the guidance offered by this concurrence, we also look to our interpretations of *Taylor.* In *Beers v. North American Van Lines,* 836 F.2d 910 (5th Cir.1988), we held that the Interstate Commerce Act, 49 U.S.C.App. § 1 et seq., when raised as a defense to a state court cause of action, did not create removal jurisdiction.[10] We interpreted *Taylor* as emphasizing the limited nature of the *Avco* exception to the well-pleaded complaint rule, saying "the court [in *Taylor* ] required a clearly manifested congressional intent to make state claims removable to federal court." *Id.* at 913 n. 3. We found no manifest congressional intent in the statute at issue and vacated the district court's judgment for lack of jurisdiction.

In *Willy v. Coastal Corp.,* 855 F.2d 1160 (5th Cir.1988), we restated this interpretation of *Taylor,* saying "[i]n cases not implicating the LMRA, we have read the majority and concurring opinions in *Taylor* to require 'manifest congressional intent' to make a preempted state claim removable to federal court." *Id.* at 1166 (quoting *Beers* ). We went on to find no congressional "intent, manifest or otherwise," *id.,* for *Avco* to apply to permit removal of a plaintiff's state claim which alleged that he had been wrongfully discharged for exposing his employer's violations of federal environmental laws.[11]

---

**10.** *But see Deford v. Soo Line Railroad Co.,* 867 F.2d 1080 (8th Cir.1989) (holding that the Interstate Commerce Act "so pervasively occupies the field of railroad governance" as to completely preempt state law claims and create removal jurisdiction).

**11.** *See also, Richardson v. United Steelworkers of America,* 864 F.2d 1162, 1169 (5th Cir.1989) (reiterating narrow application of *Avco* exception after *Taylor,* while expanding the *Avco* exception to cases alleging a breach of the duty of fair representation).

### B. The *Avco* Exception As Applied to the LHWCA

Our task here is to apply the analysis of *Avco* and its progeny to section 5 of the LHWCA, 33 U.S.C. § 905, to determine if the district court had jurisdiction to dismiss the plaintiffs' cause of action. Therefore, we look in more detail at the reasoning in the cases discussed above and apply it specifically to section 5 and the LHWCA. The natural starting place to accomplish that task is *Avco* itself—which, unfortunately, gives us little guidance. The Court in *Avco* looked to section 301 of the LMRA and found that section 301 furnished a framework of federal substantive law to address the plaintiff's complaint. Because the law applicable to a suit under that section is federal, even if the suit is brought in state court, the Court concluded that the claim was one arising under the laws of the United States within the meaning of 28 U.S.C. § 1441(b). *Avco*, 390 U.S. at 560, 88 S.Ct. at 1237.

We turn next to *Franchise Tax* which, in its analysis of the *Avco* exception to the well-pleaded complaint rule, elucidates the rather opaque reasoning of *Avco* itself. The Court explains that *Avco* narrowly tailored the exception it carved out, making it dependent first upon the civil enforcement provision of section 301 of the LMRA. The fact, then, that there was clearly a federal cause of action available to the *Avco* plaintiff under section 301 was essential to the Court's reasoning. *Franchise Tax*, 463 U.S. at 23, 103 S.Ct. at 2853. The Court then applied this inquiry to ERISA and discovered that ERISA contains a civil enforcement provision directly parallel to that in section 301. ERISA § 502(a), 29 U.S.C. § 1132(a)(1)(B). It found, however, that the statute did not provide a remedy for the plaintiff state government before it, nor did it provide a cause of action of the sort that state government was asserting:

> The phrasing of § 502(a) is instructive. Section 502(a) specifies which persons—participants, beneficiaries, fiduciaries, or the Secretary of Labor—may bring actions for particular kinds of relief. It neither creates nor expressly denies any cause of action in favor of state governments, to enforce tax levies or for any other purpose.

*Franchise Tax*, 463 U.S. at 25, 103 S.Ct. at 2854. The Court concluded that the suit by state tax authorities did not "arise under" ERISA because the statute created no cause of action in their favor, nor did a suit seeking declaratory judgment "arise under" ERISA because section 502 provides no one other than participants, beneficiaries or fiduciaries with an express cause of action for a declaratory judgment. *Id.* at 25–27, 103 S.Ct. at 2854–56.

■ In the case before us, neither party argues that the plaintiffs could have brought their wrongful death action in federal court. The LHWCA contains no civil enforcement provision akin to that in section 301 of the LMRA. No specific federal cause of action is set forth in the statute that would be available to the plaintiffs in this case. Thus, the LHWCA does not serve to "create" a cause of action in either state or federal court in the circumstances before us. However, section 5 [12] of the

---

**12.** 33 U.S.C. § 905 reads in relevant part:

(a) Employer liability; failure of employer to secure payment of compensation.

The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee. For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 904 of this title.

(b) Negligence of vessel.

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof,

LHWCA provides that the remedies set forth in the statute are exclusive, thus "expressly denying" a cause of action in favor of some plaintiffs.[13] The language from *Franchise Tax* quoted above suggests that the express denial of a cause of action may serve the same function as the creation of a federal cause of action.

However, the "express denial" of a cause of action will always be present where federal law preempts state law. Every time federal preemption is asserted as a defense, and the defendant seeks to use that defense as a basis for removal jurisdiction, the defendant can assert that the "express denial" language of *Franchise Tax* is satisfied. Something more must therefore be required to create removal jurisdiction if the well-pleaded complaint rule is to have continued vitality, a result clearly indicated by the cases. *See e.g., Taylor,* 481 U.S. at 63, 107 S.Ct. at 1546; *Franchise Tax,* 463 U.S. at 11–13, 103 S.Ct. at 2847–2848.

The Court in *Taylor* indicates what constitutes the something more necessary to find that the *Avco* exception applies. First, the Court looks to the statute at issue— ERISA—and determines that it contains a specific jurisdictional grant to the federal courts to enforce the cause of action created by section 502. The language of this grant is "closely parallel" to that of the jurisdictional subsection of section 301(a) of the LMRA, 29 U.S.C. § 185(a). *Taylor,* 481 U.S. at 65, 107 S.Ct. at 1547. The Court interpreted this closely parallel language

as evidence of congressional intent to create similar meaning, and thus to extend the *Avco* exception to causes of action arising under section 502(a) of ERISA. *Id.* Additionally, the Court looked to the legislative history of ERISA and found explicit language in the Conference Report on the statute to the effect that causes of action arising under section 502(a) are " 'to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the [LMRA].' " *Id.* at 65–66, 107 S.Ct. at 1547 (quoting H.R. Conf.Rep. No. 93–1280 p. 327 (1974), U.S.Code Cong. & Admin.News 1974, pp. 4639, 5107.

The LHWCA contains no specific jurisdictional grant similar to those found in ERISA and the LMRA. On the contrary, federal question jurisdiction can only be obtained for claims regarding the LHWCA under the general federal question provisions of 28 U.S.C. § 1331 (1976).[14] Further, the legislative history of the statute is devoid of any indication of the kind of congressional intent found to exist with respect to ERISA.[15] The argument that the LHWCA is among the few statutes to which the *Avco* exception will apply must therefore fail. There is no federal cause of action the plaintiffs could have pleaded, and the parties have not pointed to, nor have we found, any expression in the statute or the legislative history of congres-

may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness of a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of

all other remedies against the vessel except remedies available under this chapter.

13. We do not here decide that the plaintiffs' cause of action in this case is expressly denied by the LHWCA. Because we hold that we do not have jurisdiction, we do not reach the question of whether the plaintiffs' state law claims are in fact preempted.

14. *See Jenkins v. McDermott, Inc.,* 734 F.2d 229, 231 n. 1 (5th Cir.), *vacated in part on other grounds,* 742 F.2d 191 (5th Cir.1984); *Lowe v. Ingalls Shipbuilding, Div. of Litton Sys., Inc.,* 723 F.2d 1173, 1177 n. 3 (5th Cir.1984). We note that this court has held that section 5(b) of the LHWCA, 33 U.S.C. § 905(b), does not convert tort claims against vessels into federal questions independent of admiralty. *Christoff v. Bergeron,* 748 F.2d 297, 298–99 (5th Cir.1984); *Russell v. Atlantic & Gulf Stevedores,* 625 F.2d 71, 72 (5th Cir.1980).

15. We recognize that the LHWCA was initially passed in 1927, long before the passage of the LMRA. While it therefore might not be entirely

sional intent to apply something similar to *Avco* exception. The exclusivity provision of section 905, coupled with the admittedly broad scope of the LHWCA, is not enough under *Avco, Franchise Tax* and *Taylor* to create an *Avco* exception. The LHWCA is, in this case, nothing more than a statutory defense to a state-court cause of action— the classic circumstance of non-removability.

A final barrier to the defendants' argument that we have jurisdiction is that this court has previously held that the LHWCA, when its preemptive power is asserted as a defense to a claim, will not overcome the well-pleaded complaint rule to create federal removal jurisdiction. In *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173 (5th Cir.1984), the plaintiffs sought a declaratory judgment determining whether their employer could maintain an independent cause of action against a third party for indemnification of amounts paid to the plaintiffs under the LHWCA. The plaintiffs and the third party asserted that the employer's only remedy was the right of subrogation under the LHWCA. We refused to decide whether the employer could recover against the third party joint tortfeasor. We applied the well-pleaded complaint rule and held that the LHWCA was asserted as a defense which could not form the basis of section 1331 jurisdiction. *Id.* at 1183.[16]

## IV.

We apply the well-pleaded complaint rule to this action and find that removal was

---

appropriate to demand of the legislative history of the LHWCA the same kind and degree of specificity that the Court found persuasive in *Taylor*, nevertheless we think that the import of *Franchise Tax* and *Taylor* is that a clear indication of legislative intent to create removal jurisdiction where section 905 is asserted as a defense is required. Further, we note that broad amendments were made to the statute in both 1972 and 1984. Thus, the statute has been amended twice since the decision in *Avco* and once since the passage of ERISA and the legislative history of the amendments is similarly devoid.

**16.** A majority of a panel of this circuit in *Texas Employers' Ins. Ass'n v. Jackson*, 820 F.2d 1406 (5th Cir.1987), *vacated*, 862 F.2d 491 (5th Cir. 1988) (en banc), reached a result contrary to

---

improper. Therefore, we VACATE the judgment of the district court. We REMAND the case to the district court with the instruction that it remand to state court.

JOHNSON, Circuit Judge, specially concurring.

Compelled by binding Circuit precedent, I concur in the result reached by this Court today in the instant case. Nevertheless, in view of conflicting pronouncements by members of this Court in previous opinions on the issue of whether the LHWCA is so completely preemptive as to create federal question jurisdiction within the purview of the *Avco* exception to the "well-pleaded complaint" rule, I respectfully urge this Court to afford en banc consideration to the instant appeal.

In a most scholarly and thorough opinion, the Court today details with precision the evolution of the *Avco* exception to the "well-pleaded complaint" doctrine; no need exists to repeat that chronology. After doing so, this Court concludes that, contrary to the legislative history and statutory language of the LMRA and ERISA, the legislative history and statutory language of the LHWCA do not evince any congressional intent to make state claims preempted by the LHWCA removable to federal court pursuant to the *Avco* exception. Specifically, this Court points to the fact that the LHWCA does not include a civil enforcement provision similar to that contained in the LMRA and ERISA. The

---

*Lowe.* The majority of the panel in *TEIA* argued that the preemptive force of the LHWCA was so extensive as to create removal jurisdiction. In fact, the argument went, the LHWCA is more broadly preemptive than is ERISA or the LMRA in that it creates an expansive scope of federal remedies for longshore and harbor workers which is much more comprehensive than the remedies provided for by the LMRA or ERISA. Thus, the panel majority concluded, the LHWCA has exactly the sort of preemptive force contemplated by *Franchise Tax.* The en banc court vacated the panel opinion and then pretermitted the jurisdictional question. We are therefore not bound by the panel opinion and are free to disagree with its conclusion that the analysis can rest on a measurement of the "preemptive force" of the statute.

civil enforcement provisions in the LMRA and ERISA both provide a specific jurisdictional grant to the federal courts to enforce the causes of action created by those acts. Moreover, in concluding that the LHWCA does not create federal removal jurisdiction within the context of the *Avco* rule, this Court rejects the notion that the exclusivity provision of the LHWCA, Section 905, coupled with the preemptive force of the LHWCA, will suffice to create such removal jurisdiction. Finally, the Court notes that a previous panel of this Court, in *Lowe v. Ingalls Shipbuilding,* 723 F.2d 1173 (5th Cir.1984), Judge Garwood speaking for the panel (Judges Garza and King), adhered to the well-pleaded complaint rule in that LHWCA case, concluding that the LHWCA was nothing more than a defense to a state claim which could not form the basis of federal removal jurisdiction.

Persuaded that *Lowe* constitutes binding precedent on this issue, I concur in the result reached by the Court today which follows *Lowe;* however, due to the differing views previously expressed by my fellow colleagues on this Court as to this issue, en banc treatment of the instant appeal is warranted. As to the particular views on this issue expressed by members of this Court, it is noted that in the original panel opinion in *Texas Employers' Insurance Association v. Jackson,* 820 F.2d 1406 (5th Cir.1987), authored by Judge Brown (Judges Brown and Reavely), the panel majority recognized that, under the well-pleaded complaint rule, federal preemption is generally a defensive matter which does not give rise to federal removal jurisdiction; nevertheless, the majority then concluded that the LHWCA was so preemptive as to bring the case within the *Avco* exception. Dissenting from the majority opinion in that case, however, Judge Jones, citing the previous decision of this Court in *Lowe,* stated that "[a]bsent a direct expression of legislative intent to create federal jurisdiction for all causes of action related to LHWCA, the well-pleaded complaint rule may not be overcome." *Texas Employers',* 820 F.2d at 1424 n. 1.

Thereafter, this Court determined to consider the *Texas Employers'* case en banc. As noted by the Court today, however, the en banc Court avoided resolving "this difficult issue" by pretermitting the jurisdictional issue and vacating the panel opinion on another basis. Specifically, the en banc Court concluded that, even assuming the federal district court in that case possessed jurisdiction, the district court nevertheless did not possess the authority to enter the injunctive and declaratory relief requested by the defendant. *See Texas Employers' Insurance Association v. Jackson,* 862 F.2d 491, 496–97 n. 8 (5th Cir.1988) (en banc).

In a dissenting opinion to the Court's en banc opinion in *Texas Employers',* however, Judge Brown, joined by Judge Williams, maintained that federal removal jurisdiction was created in that case primarily by virtue of the comprehensive regulatory scope of the LHWCA. Specifically, the dissent, emphasizing the reasoning of the original panel majority opinion in *Texas Employers',* stated

Our determination that the LHWCA is so preemptive as to create federal question jurisdiction is no "expansion" of the *Avco* rule. The LHWCA, if anything, is broader, and more comprehensive than the LMRA. The LMRA merely places jurisdiction of labor disputes in the federal district courts. The LHWCA, on the other hand, contains not only the exclusive remedy section (§ 905(a)), but also sets out sections and chapters that comprehensively regulate employers and insurance carriers that provide LHWCA coverage, and utterly control the sum total of rights and obligations of insurers, employers and employees. This, by no means, then dilutes the *Avco* rule; it acknowledges an exception more powerful than the original.

*Texas Employers',* 862 F.2d at 512. (citation omitted).

Without directly addressing the above issue regarding the LHWCA and the *Avco* exception, two separate concurrences to the en banc opinion in *Texas Employers'* (Judges Clark and Rubin) lamented the prospect of litigants in state courts seeking to enforce their right to not have a clearly preempted federal claim litigated in a state court. Too often, the concurrences argued, such litigants are virtually trapped in state court and forced to rely on the slim possibility of securing discretionary review of

**1168**

their claims in the Supreme Court which, due to the overburdened status of the current docket of the Supreme Court, is more often than not an exercise in futility. In this regard, it can hardly be doubted that a ruling by this Court that the LHWCA creates federal removal jurisdiction within the meaning of the *Avco* rule would to a certain extent address the above problem highlighted by the concurrences.

In short, the issue of whether the LHWCA creates federal removal jurisdiction is an issue of extreme importance to this Circuit and its litigants. A resolution of this issue in either direction, obviously, will impact greatly on the interrelationship between state courts and federal courts in the area of claims within the regulatory sphere of the LHWCA. Accordingly, with all deference to the scholarly and thorough opinion handed down today, and in which I join because of binding Circuit precedent, I respectfully urge that this Court consider the instant appeal en banc.